UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

DAVID EDWARD S.,

                                    Plaintiff,

v.                                                                    5:20-cv-1550 (TWD)

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.

_____

APPEARANCES:                                          OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC        KENNETH R. HILLER, ESQ.
  *Counsel for Plaintiff*                                    MARY ELLEN GILL, ESQ.[1]
6000 North Bailey Avenue – Suite 1A
Amherst, NY 14226

SOCIAL SECURITY ADMINISTRATION              NATASHA OELTJEN, ESQ.
OFFICE OF THE GENERAL COUNSEL
  *Counsel for Defendant*
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, MA 02203

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>**DECISION AND ORDER**</u>

        David Edward S. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of a final decision of the Commissioner of Social Security ("Commissioner")

denying his application for Disability Insurance Benefits ("DIB").  (Dkt. No. 1.)  This case has

proceeded in accordance with General Order 18 of this Court which sets forth the procedures to

_____

[1] Plaintiff's brief, (Dkt. No. 7-1), was signed and submitted by Attorney Gill of the Law Offices of Kenneth Hiller, PLLC.  However, Attorney Gill never filed a Notice of Appearance as required by N.D.N.Y. Local Rule 11.1(a).  (*See generally* Docket.)  The Court has accepted and considered Plaintiff's brief in issuing this Decision and Order, but counsel must follow Local Rule 11.1(a) in the future.

be followed when appealing a denial of Social Security benefits.  Both parties filed briefs.  (Dkt.

Nos. 7-1, 11.)  Oral argument was not heard.  Pursuant to 28 U.S.C. § 636(c), the parties have

consented to the disposition of this case by a Magistrate Judge.  (Dkt. Nos. 3, 4.)  For the reasons

discussed below, the Commissioner's decision denying Plaintiff benefits is affirmed.

## I.      BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was born in 1977 and completed a master's degree in Business Development and

Human Resources from Villanova University.  (T. at 46.[2])  He served in the U.S. Navy where he

received other specialized training in electrical work and construction work.  *Id.* at 47.  He has a

variety of past relevant work as a laborer for a water company, manager of a bar/restaurant,

media operations manager, and a safety officer for the Navy.  *Id.* at 214.  He stopped working

because of his "self-destructive personality."  *Id.* at 56.

Plaintiff filed for DIB on August 19, 2019, claiming a disability onset date of July 1,

2019.  *Id.* at 186.  He alleged the following disabilities: post-traumatic stress disorder ("PTSD"),

lower back pain, tinnitus, and temporomandibular joint disorder.  *Id.* at 213.  The Commissioner

denied Plaintiff's initial application and maintained the denial after reconsideration.  *Id.* at 85,

98.  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ").  *Id.* at 124-

25.  ALJ Robin Hoffman held a hearing on June 11, 2020, and Plaintiff testified.  *Id.* at 39-75.

The ALJ denied Plaintiff's claim for benefits on June 30, 2020, and the Appeals Council denied

Plaintiff's request for review on October 30, 2020.  *Id.* at 1-5, 9-22.  Plaintiff now seeks this

Court's review.  (Dkt. No. 1.)

---

[2] The Administrative Transcript is found at Dkt. No. 6.  Citations to the Administrative
Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein
will be used rather than the page numbers the Court's CM/ECF electronic filing system assigns.
Page references to other documents identified by docket number are to the page numbers
assigned by the Court's CM/ECF electronic filing system.

## II.      RELEVANT LEGAL STANDARDS

### A.      Standard of Review

In reviewing a final decision of the Commissioner, courts must first determine whether the correct legal standards were applied, and if so, whether substantial evidence supports the decision.  *Atwater v. Astrue*, 512 F. App'x 67, 69 (2d Cir. 2013) (citing *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999)); *see also Brennan v. Colvin*, No. 13-CV-6338 (AJN) (RLE), 2015 WL 1402204, at *10 (S.D.N.Y. Mar. 25, 2015).[3]  "Failure to apply the correct legal standards is grounds for reversal."  *Pollard v. Halter*, 377 F.3d 183, 188-89 (2d Cir. 2004).  Accordingly, the reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied.  *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

If the ALJ applied the correct legal standards, the reviewing court must determine whether the ALJ's decision is supported by substantial evidence.  *Tejada*, 167 F.3d at 773; *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  "Substantial evidence means more than a mere scintilla."  *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*; *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the ALJ's finding as to any fact is supported by substantial evidence, it is conclusive.  42 U.S.C. § 405(g); *Diaz v. Shalala*, 59 F.3d 307, 312 (2d Cir. 1995).

When inadequacies in the ALJ's decision frustrate meaningful review of the substantial evidence inquiry, remand may be appropriate.  *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir.

---

[3] "Since the standards for determination of disability and for judicial review in cases under 42 U.S.C. § 423 and 42 U.S.C. § 1382c(a)(3) are identical, decisions under these sections are cited interchangeably."  *Donato v. Sec'y of Dep't of Health & Hum. Servs. of U.S.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983).  Moreover, "[t]he regulations that govern the two programs are, for today's purposes, equivalent."  *Smith v. Berryhill*, 139 S. Ct. 1765, 1772 (2019).

2019); *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).  Remand may accordingly be appropriate

where the ALJ has failed to (1) develop the record, *Klemens v. Berryhill*, 703 F. App'x 35, 38

(2d Cir. 2017); *Rosa v. Callahan*, 168 F.3d 72, 82 (2d Cir. 1999); (2) adequately appraise the

weight or persuasive value of witness testimony, *Estrella*, 925 F.3d at 98; *Burgess v. Astrue*, 537

F.3d 117, 130 (2d Cir. 2008); or (3) explain his reasoning, *Klemens*, 703 F. App'x at 36-38;

*Pratts*, 94 F.3d at 39.

      **B.**     **Standards for ALJ Evaluation of Opinion Evidence**

      The regulations regarding the evaluation of medical evidence have been amended for

claims filed after March 27, 2017,[4] and several of the prior Social Security Rulings ("SSR"),

including SSR 96-2p, have been rescinded.  According to the new regulations, the Commissioner

"will no longer give any specific evidentiary weight to medical opinions; this includes giving

controlling weight to any medical opinion."  *Revisions to Rules Regarding the Evaluation of

Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan.

18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the Commissioner must

consider all medical opinions and "evaluate their persuasiveness" based on the following five

factors: supportability; consistency; relationship with the claimant; specialization; and "other

factors."  20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

      Although the new regulations eliminate the perceived hierarchy of medical sources,

deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ

must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he

or she] find[s] all of the medical opinions."  *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and

(b)(1).  The two "most important factors for determining the persuasiveness of medical opinions

---

[4] Plaintiff's application was dated August 19, 2019.  (T. at 186.)  Thus, the new regulations apply
in his case.

are consistency and supportability," which are the "same factors" forming the foundation of the

treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability

and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2).

With respect to "supportability," the new regulations provide "[t]he more relevant the objective

medical evidence and supporting explanations presented by a medical source are to support his

or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the

medical opinions or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(1),

416.920c(c)(1). The regulations provide with respect to "consistency," "[t]he more consistent a

medical opinion(s) or prior administrative medical finding(s) is with the evidence from other

medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s)

or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the

three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* at

§§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical

opinions to be equally well supported and consistent with the record, but not the same, the ALJ

must articulate how he or she considered those factors contained in paragraphs (c)(3) through

(c)(5). *Id.* §§ 404.1520c(b)(3), 416.920c(b)(3).

## III.    THE ALJ'S DECISION

In her June 20, 2020, decision, the ALJ applied the five-step sequential evaluation

promulgated by the Commissioner for adjudicating disability claims. (T. at 11-22.) First, the

ALJ found Plaintiff meets the insured status requirements of the Social Security Act through

June 20, 2024; and she found he had not engaged in substantial gainful activity since the alleged

onset date of July 1, 2019. *Id.* at 11. The ALJ next determined Plaintiff has the following severe impairments: "post-traumatic stress disorder, major depressive disorder, borderline personality disorder, alcohol use disorder, and cocaine use disorder." *Id.* at 12. ALJ Hoffman then determined Plaintiff does not have an impairment or combination of impairments meeting or medically equaling one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (the "listings"), specifically considering mental health listings 12.04, 12.06, and 12.15, which generally address disorders relating to depression, anxiety, and post-traumatic stress, respectively. *Id.* at 12-14.

The ALJ next found, based on the above-stated impairments, Plaintiff has the residual functional capacity ("RFC")

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant retains the ability to understand and follow simple instructions and directions and perform simple tasks independently. The claimant can maintain attention and concentration for simple tasks, regularly attend to a routine, and maintain a schedule. The claimant can relate to and interact appropriately with all others to the extent necessary to carry out simple tasks. The claimant can handle simple, repetitive work-related stress in that he can make occasional decisions directly related to the performance of simple tasks in a position with consistent job duties that does not require him to supervise or manage the work of others.

*Id.* at 14. Based upon this RFC, the ALJ determined Plaintiff could not perform any past relevant work. *Id.* at 20. However, in considering Plaintiff's RFC, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 C.F.R. § 404, Subpart P, Appendix 2, the ALJ found Plaintiff can perform work at jobs existing in significant numbers in the national economy. *Id.* at 21-22. Thus, the ALJ determined Plaintiff was not under a disability, as defined in the Social Security Act, from July 1, 2019, through the date of the ALJ's decision. *Id.* at 22.

IV.    **THE PARTIES' CONTENTIONS**

Plaintiff contends the RFC is not supported by substantial evidence because the ALJ

failed to properly evaluate the opinion evidence.  (Dkt. No. 7-1 at 12-18.)  In response, the

Commissioner contends the ALJ's decision applies the correct legal standards and is supported

by substantial evidence.  (Dkt. No. 11 at 9-18.)

V.    **SUMMARY OF RELEVANT MEDICAL RECORDS**

Plaintiff is a veteran with several mental health issues who was treated at various

Veterans Administration ("VA") facilities.  He was hospitalized for depression, substance

abuse, and other psychiatric issues in 2014, 2017, and in 2019 prior to the July 1, 2019, date of

disability.  (T. at 186, 614, 1534, 1540. [5])  Plaintiff voluntarily discharged himself after the most

recent admission in March of 2019 when he received treatment for major depression and other

psychiatric issues.  *Id.* at 1534-40.  Shortly thereafter, he relocated to the Watertown, NY area,

to be near family, and established treatment at the VA facility there.  *Id.* at 514.

In April 2019, Plaintiff saw Brad Brown, Psy.D. ("Dr. Brown"), at the VA for a mental

health "intake session."  *Id.* at 660.  Dr. Brown noted Plaintiff was casually dressed, calm, and

cooperative, and he had good eye contact.  *Id.*  His mood was labile, but his affect appropriate;

his speech was clear and normal, with logical and linear cognition; and he was fully oriented

with good judgment and insight.  *Id.*  Plaintiff indicated he preferred psychotherapy rather than

medication.  *Id.*

In May 2019, Plaintiff saw licensed master social worker Christina Galson ("Ms.

Galson"), who noted he was oriented in all spheres, and that he had recently obtained a full-

---

[5] Multiple copies of some of the same treatment records from the medical chart of the various
VA facilities are contained in the Administrative Transcript.  The Court will only cite to one
location in the Administrative Transcript for relevant records and not to the multiple duplicate
records.

time job and would be working over 50 hours per week.  *Id.* at 644.  That same day, he was seen by Dr. Brown, who found Plaintiff to have sporadic eye contact, but his mood was calm and his affect appropriate; his speech was clear and normal; and he was fully oriented with fair judgment and insight.  *Id.* at 645.  In an addendum, dated nine days later, it was noted Plaintiff wanted to reschedule appointments to coordinate with his work schedule.  *Id.* at 646.

In June 2019, Plaintiff met with Judith Hyatt, Pharm.D. ("Dr. Hyatt"), a psychiatric pharmacy specialist.  *Id.* at 633.  It was a video consult with poor quality, but Dr. Hyatt noted Plaintiff had a depressed mood and he was anxious and angry.  Plaintiff was willing to try a medication (Lexapro) for anxiety and depression.  *Id.* at 631.

In July 2019, after the date of disability, Plaintiff met with a VA psychiatrist, Francine Pokracki, M.D., via videoconference for a scheduled suicide risk assessment.  *Id.* at 620-22.  Although Plaintiff was "totally meandering in conversation" and reported chronic suicidal ideation with recurrent attempts, his affect did not match; it was "very upbeat."  *Id.* at 620.  Dr. Pokracki was unable to make a comprehensive assessment due to the poor sound quality of the videoconference, but she concluded that no immediate action was required.  *Id* at 620-22.  Shortly thereafter, Dr. Pokracki held another videoconference session where she observed that although Plaintiff's thought process was disorganized, his mood was euthymic, with congruent and non-labile affect; his speech was normal; he was well groomed; he was pleasant and cooperative; his cognition, insight, and judgment were intact, and he denied current suicidal ideation.  *Id.* at 1679-81.

In August 2019, Plaintiff met with a Nurse Practitioner, Carrie Hostetler ("NP Hostetler"), to establish primary care.  *Id*. at 810-11.  His physical impairments included a lumbosacral strain, and he reported chronic back pain rated as 4/10.  *Id.* at 814.  Plaintiff also

stated the pain was "tolerable" and he had been going to the gym and taking his parents' dog for walks. *Id.* at 811, 814. NP Hostetler observed his sensation and range of motion were intact, and she primarily discussed Plaintiff's efforts to quit drinking. *Id.* at 811-14.

The same day in August 2019, Plaintiff had a consultation with a licensed clinical social worker, Deborah Launt ("Ms. Launt"). *Id.* at 2035. Ms. Launt observed Plaintiff's hygiene was good; his judgment was intact; he was oriented; he made good eye contact; he was very cooperative and polite; his speech content was relevant with average tone and pace; his thoughts were organized, reasonable, and rational; his affect was consistent with his mood and within average range; his memory was intact; and his concentration was good. *Id.* She recommended individual therapy to address Plaintiff's PTSD. *Id.* at 2040.

Later in August 2019, Plaintiff had a psychiatric consultation with Marek Makuch, M.D. ("Dr. Makuch"), regarding his depression and PTSD. *Id.* at 794. Dr. Makuch observed Plaintiff was cooperative and pleasant, with normal speech; coherent thought process; no unusual thought content; intact memory and cognition; "OK" mood; restless and mildly anxious affect; and limited/fair judgment. *Id.* at 798. Dr. Makuch prescribed psychotropic medication and recommended follow up psychotherapy. *Id.* at 798-800.

In September 2019, Plaintiff told Dr. Makuch he had a "good week" despite noncompliance with medication; the overall incidence of bad moods and PTSD issues had been "considerably reduced;" mild depression continued but was transient in nature; and he had not experienced any suicidal ideation. *Id.* at 788-89. Dr. Makuch's mental status exam of Plaintiff was essentially the same as to the previous month, except that Plaintiff's mood was "good." *Id.* at 790-91.

In October 2019, Plaintiff told Dr. Makuch he was agitated, and "triggered by the daily stressors and stupid people." *Id.* at 771. He continued to experience sporadic suicidal ideation,

as well as hypervigilance, anxiety, and avoidant behavior when exposed to large crowds. *Id.*
Dr. Makuch again made similar mental status findings as in September, except noted that
Plaintiff's affect was anxious. *Id.* at 773. Plaintiff rejected Dr. Makuch's recommendation to
increase his medication dosage or appointment frequency. *Id.* at 774.

    In November 2019, Plaintiff returned to NP Hostetler, reporting that he was "drinking
heavily" and not taking various prescribed medications. *Id.* at 760. NP Hostetler's examination
reflected that Plaintiff was alert and oriented, and talkative, with an elevated mood and laughing
frequently; she also noted that his range of motion and sensation were intact. *Id.* at 764.

    Also in November 2019, licensed clinical social worker Judith Schneider ("Ms.
Schneider"), a member of Plaintiff's suicide prevention case management team, telephoned
Plaintiff to assess his status. *Id.* at 757. He reported his life was now more stable since moving
back to his home state, his stressors had diminished, and he had "good friends," family support,
and a connection to the community since he was volunteering at a local food pantry. *Id.* at 757-
58. Although he admitted he had not taken any of his psychiatric medications in four months,
he reported that his psychiatric needs were being met. *Id.* at 758-59.

    In December 2019, Kaitlynn Tredway, a suicide prevention case manager, called
Plaintiff, but he was unable to talk for long because he was about to board a plane. *Id.* at 756.
He reported "doing very well" and denied any suicidal ideation or other concerns. *Id.*

    In January 2020, Ms. Schneider called Plaintiff again. *Id.* at 2722. Plaintiff reported
that he still had daily suicidal ideation, but these thoughts were transient, he had no intent, and
he believed the thoughts were "more habitual now especially since all is going well in his life."
*Id.* He further reported his mood was stable, his parents (who lived next door) were
"consistent supports" in his life, he had recently returned from a trip to Costa Rica, and he had

recently stopped volunteering at a food pantry but was hoping to try other volunteer work soon. *Id.* at 2723.  Ms. Schneider described him as "pleasant and upbeat."  *Id.*

In February 2020, Plaintiff told Ms. Schneider that "everything is OK" and he denied ongoing depression symptoms, or that suicidal thoughts were an active concern.  *Id.* at 2718. He described plans to go to Costa Rica and support a friend with creating a business plan while there.  *Id.* at 2719.  Ms. Schneider noted Plaintiff had not met with his psychiatrist since October 2019 because he reportedly did not "click" with him; he was not taking all his prescribed medication; he was "ambivalent" about further treatment; and said he felt "very comfortable discontinuing this added support."  *Id*. at 2718-19.  The same day, the VA suicide prevention team reevaluated Plaintiff's suicide risk, and determined he no longer met the criteria for placement on the high-risk list.  *Id*. at 2716.  There are no further records of any mental health treatment after February 2020.

## VI.   THE COURT'S ANALYSIS

### A.      The RFC Determination

A claimant's RFC is the most he or she can do despite his or her limitations.  20 C.F.R. § 404.1545(a)(1).  "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.  A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d 45 52 (2d Cir. 1999)).  "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis."  *Id*. (citing 20 C.F.R. § 404.1545(a)).  "Ultimately, '[a]ny impairment-related limitations created by

an individual's response to demands of work . . . must be reflected in the RFC assessment.'" *Hendrickson v. Astrue*, No. 11-CV-0927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting SSR 85-15, 1985 WL 56857, at *8). The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

It is the province of the ALJ to resolve genuine conflicts in the record. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). However, the Commissioner need not "reconcile explicitly every shred of medical testimony." *Galiotti v. Astrue*, 266 F. App'x 66, 66 (2d Cir. 2008) (citing *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)). Here, the ALJ resolved conflicts between the various medical opinions and credited those portions of the medical opinions deemed most consistent with and supported by Plaintiff's overall treatment record and activities. In doing so, the ALJ appropriately evaluated the conflicting medical evidence, and made an RFC finding consistent with the overall record. *See Matta v. Astrue*, 508 F. App'x. 53, 56 (2d Cir. 2013) (although ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all the evidence available to make an RFC finding consistent with the record as a whole). Considering the ALJ's detailed analysis of Plaintiff's medical history, the relevant medical opinions, Plaintiff's testimony, and his activities of daily living, this Court concludes the RFC determination was supported by substantial evidence, as set forth below.

### B.      Relevant Medical Opinions

#### 1.      State Agency Mental Health Consultative Opinions

Plaintiff contends the ALJ failed to properly evaluate the opinions of state agency psychologists, E. Kamin, Ph.D. ("Dr. Kamin") and T. Inman, Ph.D. ("Dr. Inman"), by not

incorporating the moderate limitations found by them, and because they did not consider the opinion of William A. Reynolds, Psychologist ("Dr. Reynolds"). (Dkt. No. 7-1 at 12-17.) For the following reasons, the Court disagrees.

In determining Plaintiff's RFC, the ALJ properly considered all the treatment records, including the records from the various VA facilities which contained the opinions of VA providers and record reviewers. (T. at 12-20.) She also considered Plaintiff's activities as he reported at the hearing and to his treatment providers. *Id.* at 17. An ALJ is required to assess the RFC based upon all of the relevant evidence in the administrative record, including a claimant's medical history, objective medical evidence, effects of treatments, the claimant's activities and statements, statements from other parties, and medical opinions. *See* 20 C.F.R. § 404.1545(a)(1); *see also* SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). In evaluating the functional limitations associated with Plaintiff's mental impairments, the ALJ found the opinion of Dr. Kamin to be generally persuasive, and the opinion of Dr. Inman to be persuasive. (T. at 19-20.)

Dr. Kamin reviewed the evidence of record and issued a report on November 1, 2019. *Id.* at 79-83. He opined Plaintiff had (1) no limitations in understanding, remembering, or applying information; (2) moderate limitations in interacting with others and in concentrating, persisting, or maintaining pace; and (3) mild limitations in adapting or managing oneself. *Id.* at 79.

In explaining further, Dr. Kamin assessed Plaintiff's understanding and memory limitations regarding his ability to perform sustained work activities noting Plaintiff was (1) not significantly limited in the ability to remember locations and work-like procedures, nor in the ability to understand and remember very short and simple instructions; and (2) moderately limited in the ability to understand and remember detailed instructions. *Id.* at 81. In considering

Plaintiff's ability to have sustained concentration and persistence, Dr. Kamin opined Plaintiff

was (1) not significantly limited in his ability to carry out very short and simple instructions; to

perform activities within a schedule, maintain regular attendance, and be punctual within

customary tolerances; to sustain an ordinary routine without special supervision; and to make

simple work related decisions; and (2) moderately limited in his ability to carry out detailed

instructions; to maintain attention and concentration for extended periods; and to complete a

normal workday and workweek without interruptions from psychologically based symptoms and

to perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* at

81-82.  In expanding on Plaintiff's social interaction abilities, Dr. Kamin noted Plaintiff was (1)

not significantly limited in his ability to interact appropriately with the general public; to ask

simple questions and request assistance; to get along with coworkers or peers without distracting

them; and to maintain socially appropriate behavior and to adhere to basic standards of neatness

and cleanliness; and (2) moderately limited in his ability to accept instructions and respond

appropriately to criticism from supervisors. *Id.* at 82.  About adaptation limitations, Dr. Kamin

found Plaintiff was (1) not significantly limited in the ability to respond appropriately to changes

in the work setting; to be aware of normal hazards and take precautions; and to travel in

unfamiliar places or use public transportation; and (2) moderately limited in the ability to set

realistic goals or make plans independently. *Id.* at 83.  Dr. Kamin explained further that these

assessments were based upon the relatively normal mental status exams noted in Plaintiff's

treatment records for the relevant time period. *Id.* at 79-80, 83; *see also* T. at 645-46, 660, 773,

788-91, 798-800, 1679-81, 2040.

Dr. Inman reviewed the evidence of record which contained additional records beyond

what Dr. Kaman reviewed.  (*Compare* T. at 77-78 *with* T. at 88-91.)  Dr. Inman issued a report

on February 4, 2020, (T. at 87-97), opining Plaintiff had (1) no limitations in understanding, remembering, or applying information; (2) mild limitations in interacting with others; and (3) moderate limitations in concentrating, persisting, or maintaining pace; and in adapting or managing oneself. *Id.* at 93.

In explaining further, Dr. Inman opined Plaintiff did not have limitations in understanding and memory functions. *Id.* at 95. In considering Plaintiff's ability to have sustained concentration and persistence, Dr. Inman opined Plaintiff (1) had no evidence of limitations with regard to his ability to carry out very short and simple instructions; (2) was not significantly limited in his ability to carry out detailed instructions; to sustain an ordinary routine without special supervision; to work in coordination with or in proximity to others without being distracted; or to make simple work related decisions; and (3) was moderately limited in his ability to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* at 95-96. In expanding on Plaintiff's social interaction abilities, Dr. Inman noted Plaintiff was (1) not significantly limited in his ability to interact appropriately with the general public; to ask simple questions and request assistance; to get along with coworkers or peers without distracting them; and to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and (2) moderately limited in his ability to accept instructions and respond appropriately to criticism from supervisors. *Id.* at 96. Regarding adaptation limitations, Dr. Inman found Plaintiff was (1) not significantly limited in the ability to respond appropriately to changes in the work setting; to be aware of normal hazards and take

15

precautions; and to travel in unfamiliar places or use public transportation; and (2) moderately limited in the ability to set realistic goals or make plans independently. *Id.* at 96.  Dr. Inman explained further that these assessments were based upon the relatively normal mental status exams noted in Plaintiff's treatment records for the relevant time period. *Id.* at 93-94; *see, e.g.,* T. at 645-46, 660, 756-59, 760-64, 773, 788-91, 798-800, 1679-81, 2040, 2716-19, 2722-23.

As noted above, the ALJ found the opinion of Dr. Kamin to be generally persuasive in light of his agency expertise and the review of available medical evidence. *Id.* at 19.  However, the ALJ noted Dr. Kamin's findings of moderate limitations in Plaintiff's ability to interact with others were more consistent with Plaintiff's mental health and substance abuse issues prior to the alleged onset date. *Id.*; *see also* T. at 2718-27 (Plaintiff reports to mental health providers that "everything is OK" and denies depression; he is "doing good;" has a stable mood; he traveled to Costa Rica; he was working on his house).

The ALJ found the opinion of Dr. Inman to be persuasive because of her agency knowledge, professional expertise, and she had the ability to review the available medical evidence. *Id.* at 20.  The ALJ also found Dr. Inman's opinions to be consistent with the medical evidence. *Id.*; *see, e.g.,* T. at 645-46, 660, 756-59, 760-64, 773, 788-91, 798-800, 1679-81, 2040, 2716-19, 2722-23.

### 2.    Dr. Reynolds' Opinion

Psychologist William Reynolds evaluated Plaintiff in July of 2019 in the context of determining his VA Disability Rating. *Id.* at 611-620.  Dr. Reynolds diagnosed Plaintiff with PTSD, unspecified depressive disorder, and alcohol use disorder in early remission. *Id.* at 611. While Dr. Reynolds reviewed various treatment records, and noted Plaintiff had various subjective symptoms such as depressed mood and anxiety, Dr. Reynolds did not conduct a

mental status examination, nor do a function-by-function analysis of Plaintiff's mental abilities. *Id.* at 618.   The only behavioral observations made by him of Plaintiff were as follows: "the veteran sported a significant beard and moustache with no other significant behavioral observations."   *Id.*

The ALJ found this opinion only partially persuasive.   *Id.* at 19.   In discussing the opinion, the ALJ indicated a VA determination of service-related disability is "not binding on Social Security disability claims because there is a different standard and different criteria used in the process."   *Id.*   The ALJ also noted Dr. Reynolds did not do a mental status exam and his findings were not consistent with the mental status exams of Plaintiff around the same time period.   *Id.*; *see, e.g.,* T. at 773, 788-91, 798-800, 1679-81, 2040.

### 3.   Dr. Withiam-Leitch's Opinion

The ALJ also considered the opinion of Sherry Withiam-Leitch, M.D., who also examined Plaintiff for his VA disability determination.   *Id.* at 18, 2052-65.   Dr. Withiam-Leitch conducted an examination of Plaintiff's physical abilities and addressed his spine and temporomandibular joint disorders.   *Id.* at 2052-65.   With regard to functional abilities regarding Plaintiff's spine, Dr. Withiam-Leitch opined Plaintiff could "lift/carry/push/pull comfortably 40 lbs[;] unable to squat, repetitive bending at the waist."   *Id.* at 2054.   She also found Plaintiff "unable to perform 8 hours per day 40 hours per week due to pain."   *Id.* at 2060.

The ALJ found this opinion partially persuasive due to the different disability criteria related to VA disability as compared to the rules and regulations of the Social Security Administration.   *Id.* at 18.   The ALJ also found this opinion partially persuasive because Plaintiff's back strain "is not considered to be a severe medically determinable impairment."   *Id.* Additionally, the ALJ considered Plaintiff's activities specifically noting he was working out at

his local gym before the COVID-19 shutdown, and he was doing construction remodeling on a house.  *Id.*

> **C.      Substantial Evidence Supports the ALJ's Analysis of the Opinions and Other Record Evidence in Determining Plaintiff's RFC**

First, Plaintiff asserts the RFC is not supported by the opinion evidence because the ALJ did not adequately account for the limitations addressed by Dr. Kamin and Dr. Inman.  (Dkt. No. 7-1 at 13-17.)  For the following reasons, the Court finds this unconvincing.

Plaintiff claims the ALJ did not incorporate the assessments of Drs. Kamin and Inman that Plaintiff would have moderate limitations in certain categories of functioning such as understanding, remembering, and carrying out detailed instructions; maintaining attention and concentration for extended periods; working in coordination with or in proximity to others; completing a normal workday and workweek; performing at a consistent pace; accepting instructions and responding appropriately to criticism from supervisors; and setting realistic goals or making plans independently of others.  *Id.* at 13-14; *see also* T. at 81-83, 95-96. However, having a moderate limitation in a mental functional area does not rule out a claimant's ability to do basic work activities.  *See, e.g.*, *Zabala v. Astrue,* 595 F.3d 402, 410 (2d Cir. 2010) ("None of the clinicians who examined [the plaintiff] indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations."); *Whipple v. Astrue,* 479 F. App'x 367, 370 (2d Cir. 2012) (consultative examiner's findings that plaintiff's depression caused moderate limitations in social functioning ultimately supported the ALJ's determination that plaintiff was capable of performing work that involved simple tasks and allowed for a low stress environment); *Saxon v. Colvin*, No. 13-CV-165, 2015 WL 3937206, at *6 (W.D.N.Y. June 26, 2015) ("The ALJ considered the functional limitations suggested by the medical evidence, including plaintiff's moderate limitation in the ability to

learn new tasks, perform complex tasks, make appropriate decisions, relate adequately with others, and deal with stress.  These limitations are incorporated into the RFC, which limits plaintiff to simple routine tasks in a low stress, low contact environment.").

Furthermore, both Dr. Kamin and Dr. Inman noted that "despite conditions claimant retains the ability . . . to care for self and do entry level work in low contact setting."  (T. at 80, 95.)  After setting forth specific references to the medical records, Dr. Inman also opined the records reviewed "support the [claimant's] ability to remember simple and detailed directions and instructions.  He can perform simple tasks on a sustained basis."  *Id.* at 94.  These limitations are directly incorporated into the RFC, which limits Plaintiff to "maintaining attention and concentration for simple tasks, regularly attend to a routine, and maintain a schedule."  *Id.* at 14.  The ALJ also addressed Plaintiff's ability to handle stress in the RFC specifically finding "the claimant can handle simple, repetitive work-related stress in that he can make occasional decisions directly related to the performance of simple tasks in a position with consistent job duties that does not require him to supervise or manage the work of others."  *Id.*

Next, the Court also finds no merit in Plaintiff's assertion that the opinions of Drs. Kamin and Inman are flawed because they do not specifically mention Dr. Reynolds' opinion.  (Dkt. No. 7-1 at 16.)  Dr. Reynolds' record review and opinion for the VA disability determination is dated July 13, 2019.  (T. at 620.)  Dr. Kamin's review is dated November 1, 2019, and Dr. Inman's review is dated February 4, 2020.  *Id.* at 80, 97.  Both reviewed the records to the date of their opinions which included records after the date of Dr. Reynolds' opinion.  *Id.* 79-80, 93-94.

In finding the opinion of Dr. Inman persuasive, and the opinion of Dr. Kamin generally persuasive, the ALJ did not reject the opinion of Dr. Reynolds as Plaintiff argues.  (Dkt. No. 7-1

at 16.)  Rather, the ALJ clearly considered Dr. Reynolds' opinion and found it partially

persuasive.  (T. at 15, 18-19.)  A determination made by another agency regarding a claimant's

disability is not binding on the Social Security Administration, but it is entitled to some

consideration by the ALJ.  *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (citations

omitted).  Thus, a determination by the VA that a claimant is disabled is entitled to at least "some

weight."  *Loree v. Colvin*, No. 15-CV-251 (JMC), 2016 WL 5107028, at *4 (D.Vt. Sept. 20,

2016 (citations omitted) (decided under the former SSA regulations evaluating weight of

opinions rather than persuasiveness, supportability, and consistency of opinion evidence).  The

ALJ here did not completely disregard the opinion of Dr. Reynolds or his VA disability rating of

the Plaintiff.  Instead, the ALJ considered the opinion and, as noted, found it to be partially

persuasive.  (T. at 19.)  Additionally, Dr. Reynolds' opinion was based on the same records as

the records before the ALJ, except the records before the ALJ also included treatment records

beyond what Dr. Reynolds reviewed.  Therefore, the Court finds the ALJ properly considered

Dr. Reynolds' opinion.

Turning to the opinion of Dr. Withiam-Leitch, Plaintiff argues the ALJ did not properly

consider it because the ALJ did not acknowledge the opinion restricted Plaintiff to less than full-

time work.  (Dkt. No. 7-1 at 17-18.)  Again, the Court disagrees.

Dr. Withiam-Leitch examined Plaintiff in connection with his VA disability application.

(T. at 822-30.)  As part of this evaluation, she ordered a lumbar spine x-ray, which was

"unremarkable" and showed "no significant degenerative disc disease."  *Id.* at 672.  She also

conducted an examination, which showed limited range of motion, pain with weight-bearing,

and positive straight leg raise testing, but normal gait, normal or near-normal strength, and

normal sensation (except in his feet).  *Id.* at 824-28.  According to Dr. Withiam-Leitch, Plaintiff

had a lumbosacral strain, resulting in low back pain that was increasing in severity and causing numbness and weakness in both legs. *Id.* at 823-24. She concluded Plaintiff could "comfortably" lift, carry, push, or pull 40 pounds, and was unable either to squat or to bend repetitively at the waist. *Id.* at 824, 830. She also stated that Plaintiff was "unable to perform 8 hours per day 40 hours per week due to pain." *Id.* at 830. The ALJ did not impose any limitations based on this opinion. *Id.* at 14, 18, 20.

At step two, the ALJ found that Plaintiff did not have any severe physical impairments, after considering his low back pain in particular. *Id.* at 12. The ALJ reasoned that the evidence from the relevant period showed Plaintiff's back pain and his other physical impairments were "receiving ongoing treatment and [were] routinely monitored," such that there was no evidence these impairments would have more than a minimal effect on Plaintiff's ability to perform work activities. *Id.*; *see also* 20 C.F.R. § 404.1522 (defining non-severe impairment). As a result, the ALJ found that no physical limitations were warranted. *Id.* at 12, 14, 20.

This conclusion is supported by the assessments of both state agency physicians, who considered Plaintiff's back strain and found it was not severe. *Id.* at 79, 81, 92. The ALJ reasonably found these assessments more consistent with the medical evidence and Plaintiff's testimony than Dr. Withiam-Leitch's opinion. *Id.* at 18, 20; *see also* 20 C.F.R. § 404.1520c(c)(2). Plaintiff's lumbar spine x-ray was normal, and there was limited evidence of treatment for his back condition during the relevant period, consisting solely of exams by NP Hostetler, which were benign. *Id.* at 672 (7/15/2019 - lumbar spine x-ray unremarkable), 764 (11/14/2019 - back noted as "Symmetric, without Spinal tenderness or Paraspinal tenderness/spasm, and neurological "motion and sensation intact"), 814 (8/2/2019 - back noted as "Symmetric, without Spinal tenderness or Paraspinal tenderness/spasm, and neurological

"motion and sensation intact"). By his own admission, Plaintiff's pain was tolerable, and there were multiple references to him going to the gym throughout the relevant period, as well as remodeling his parents' house. *Id.* at 63-65, 70-71, 758, 777, 811, 814, 887, 1495, 1708, 2718-19. As the ALJ further noted, Dr. Withiam-Leitch's opinion was intended to determine whether Plaintiff was disabled under VA standards, not SSA standards. *Id.* at 18; *see also* 20 C.F.R. § 404.1504.

Plaintiff's argument that the ALJ did not separately assess Dr. Withiam-Leitch's opinion that he would be unable to perform full-time work does not undermine the ALJ's findings and RFC determination. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (ALJ not required to accept limitations in opinions he rejects). Plaintiff's assertion that the ALJ "did not rely on any other physical medical opinion to contradict" this opinion is incorrect. (Dkt. No. 7-1 at 18.) To the contrary, the ALJ considered the opinions of B. Patel, M.D., and S. Padmaraju, M.D., who determined that Plaintiff did not have any physical exertional limitations or postural nonexertional limitations. (T. at 20, 81, 92.) The ALJ found these opinions persuasive because of their consistency with the complete medical record and Plaintiff's testimony. *Id.* at 20.

Although Drs. Patel and Padmaraju did not explicitly address Plaintiff's ability to perform full-time work in their opinions, the instructions for completing the agency disability determination form direct them to assess the claimant's functioning on a sustained basis – i.e, over an eight-hour day and a five-day week with normal breaks. Program Operations Manual System ("POMS") §§ DI 24510.001A.3.a, DI 24510.004C.2.b, DI 24510.050. In fact, consultants are instructed that, "if a claimant is unable to sustain a 40-hour workweek because of a severe medically determinable impairment," the consultant "must discuss sustainability in the RFC." POMS § DI 24510.057A; *see also* POMS § DI 24510.057B. Therefore, the lack of

any explicit provision for absences or breaks signifies that the state agency physicians concluded that Plaintiff could sustain a 40-hour workweek.  Moreover, the Court finds the ALJ appropriately evaluated the conflicting medical evidence and made an RFC finding consistent with the overall record.  *See Matta*, 508 F. App'x. at 56 (ALJ entitled to weigh all the evidence available to make an RFC finding consistent with the record as a whole even if the RFC did not perfectly correspond with any of the opinions of medical sources).

To the extent Plaintiff's argument could be construed to assert the ALJ erred at steps two and four of the sequential analysis, this Court finds no error at those steps with regard to both the physical and mental RFC.  The "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition severe." *Tammy C.-J. v. Comm'r of Soc. Sec.*, 523 F. Supp. 3d 368, 374 (W.D.N.Y. Feb. 26, 2021) (internal citation and quotation omitted).  Therefore, Plaintiff failed to identify any evidence to support his assertion of an erroneous step two analysis.  *Smith v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 270, 277 (W.D.N.Y. 2018) (plaintiff offered "very little argument" to support his contention of specific severe physical and mental impairments).  Likewise, the record indicates the ALJ considered evidence of all of Plaintiff's physical and mental impairments, regardless of a specific diagnosis, as part of the RFC determination.  *See Rivera v. Colvin*, 592 F. App'x 32, 33 (2d Cir. 2015) ("Rivera argues this conclusion is not supported by the record, as he was diagnosed with both anxiety and PTSD.  However, even assuming the ALJ erred at step two, this error was harmless, as the ALJ considered both Rivera's severe and non-severe impairments as he worked through the later steps."); *Morales v. Comm'r of Soc. Sec.*, No. 10-CIV-8773 (BSJ/KNF), 2012 WL 124554, at *17-18 (S.D.N.Y. January 17,

2012) (finding no legal error where ALJ did not specifically mention psychosomatic symptoms but discussed relevant medical opinions).

Thus, Plaintiff's challenge regarding the ALJ's physical and mental RFC determination is premised upon a disagreement over how the ALJ resolved arguably conflicting evidence about Plaintiff's functional limitations.  This Court will not reweigh the evidence presented to the ALJ. *See Warren v. Comm'r of Soc*. Sec., No. 3:15-CV-1185 (GTS/WBC), 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016) ("When applying the substantial evidence test to a finding that a plaintiff was not disabled, the Court 'will not reweigh the evidence presented at the administrative hearing, . . . nor will it determine whether [the applicant] actually was disabled. [Rather], [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support it.'") (quoting *Lefford v. McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996) (alteration in original)), *report-recommendation adopted by* 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016); *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing *Carroll v. Sec'y of Health and Human Servs*., 705 F.2d 638, 642 (2d Cir. 1983)).  Accordingly, the Court finds the ALJ's RFC determination regarding Plaintiff's impairments and his ability to perform full-time work is supported by substantial evidence.

## VII.   CONCLUSION

Considering the foregoing, the Court finds the ALJ applied the correct legal standards and substantial evidence supports her decision.  Remand is therefore not warranted.

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 7) is **DENIED**; and it is further

**ORDERED** that the Commissioner's motion for judgment on the pleadings (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED** that the Commissioner's decision denying Plaintiff benefits is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED** and the Clerk of Court is directed to enter judgment and close the case.

Dated:  March 22, 2022
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

25